# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

GREGORY THOMPSON,

        Plaintiff,

v.                                  Case No. 3:20-cv-1439-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,

        Defendant.

## **OPINION AND ORDER**[1]

### I.  Status

Gregory Thompson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of social anxiety disorder, major depression disorder, agoraphobia, and arthritis and a "[s]lipped [d]isc" in his lower back. Transcript of Administrative Proceedings (Doc. No. 16; "Tr." or "administrative transcript"), filed September 10, 2021, at 94, 108, 294. Plaintiff filed an application for SSI on February 21,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed September 10, 2021; Reference Order (Doc. No. 18), entered September 13, 2021.

2018, alleging a disability onset date of February 21, 2018.² Tr. at 263-71. The application was denied initially, Tr. at 93-105, 106, 121, 123-25, and upon reconsideration, Tr. at 107-19, 120, 122, 129-34.

On September 10, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. Tr. at 60-92. At the time, Plaintiff was thirty-six (36) years old. See Tr. at 75 (stating Plaintiff's date of birth). On May 5, 2020, the ALJ held a supplemental hearing via telephone,³ this time taking testimony from Plaintiff (who remained represented by counsel), the VE, and a medical expert ("ME"). See Tr. at 37-58. On May 20, 2020, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 15-26.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief in support of the request. See Tr. at 4-5 (Appeals Council exhibit list and order), 258-59 (request for review), 355-56 (brief). On October 30, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On December 22, 2020, Plaintiff commenced this action under 42 U.S.C. § 405(g),

---

² Although actually filed on March 20, 2018, see Tr. at 263, the protective filing date for the SSI application is listed elsewhere in the administrative transcript as February 21, 2018, see, e.g., Tr. at 93, 108.

³ This hearing happened shortly after the COVID-19 pandemic began.

- 2 -

as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues "[t]he ALJ's analysis of the medical opinion[s] is contrary to Agency authority and Eleventh Circuit precedent." Plaintiff's Memorandum – Social Security (Doc. No. 21; "Pl.'s Mem." or "Plaintiff's Memorandum"), filed November 10, 2021, at 1; see id. at 10-17. Plaintiff clarifies that he is only challenging the ALJ's Decision as it relates to his mental impairments, id. at 2 n.3, and therefore he is only challenging the medical opinions of record regarding his mental functioning, see id. at 10-17. Responding, Defendant on January 26, 2022 filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 26; "Def.'s Mem."). Then, with leave of Court, on March 11, 2022, Plaintiff's Reply Brief (Doc. No. 29; "Reply") was filed.[4] After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of the opinions of record regarding Plaintiff's mental functioning.

---

[4] In Plaintiff's Memorandum, he originally raised as a separate issue that the Decision was "constitutionally defective" because it was derived "from the Commissioner who was not constitutionally appointed." Pl.'s Mem. at 1; see id. at 17-19. In the Reply, Plaintiff withdrew this issue, requesting "that the Court focus only on the first substantive issue set forth in [Plaintiff's Memorandum]." Reply at 1. The constitutional issue (issue number two) is therefore deemed withdrawn.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 17-25. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since February 21, 2018, the application date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: spine disorders; obesity; diabetes mellitus,

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 4 -

type II; hypertension; major depressive disorder; and anxiety disorder with panic attacks." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 416.967(b) except with standing and walking limited to a total of four hours in an eight-hour workday; no more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes and scaffolds; no exposure to dangerous machinery and unprotected heights; no concentrated exposure to pulmonary irritants (dust, fumes, odors, gases, poor ventilation); no more than simple, routine, repetitive tasks; and no more than occasional interaction with supervisors and co-workers and none with the general public.

Tr. at 20 (emphasis omitted).

At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 24 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("34 years old . . . on the date the application was filed"), education ("limited"), lack of relevant work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 24 (emphasis and citations omitted), such as

- 5 -

"Marker," "Router," "Laundry Classifier," "Document Prepare[r]," "Cutter and Paster," and "Addresser," Tr. at 25. The ALJ concluded Plaintiff "has not been under a disability . . . since February 21, 2018, the date the application was filed." Tr. at 25 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation

omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff argues the ALJ erred in evaluating the opinions of record regarding his mental functioning. Pl.'s Mem. at 1, 10-17. According to Plaintiff, the various opinions—given by a treating mental health counselor, a consultative examiner, two state-agency consultants, and the ME—all "describe mental limitations greater than those accounted for in the ALJ's RFC." Id. at 13 (emphasis omitted). Plaintiff also contends "[t]he ALJ did not reasonably find the opinions of a treating source and two agency sources unpersuasive." Id. at 14 (emphasis omitted). Finally, Plaintiff explains the ALJ "failed to include all of the limitations set forth in the administrative findings [that the ALJ] found unqualifiedly persuasive, without explaining why." Id. (emphasis omitted). Responding, Defendant contends "substantial evidence supports the ALJ's evaluation of the opinions and prior administrative findings." Def.'s Mem. at 4 (emphasis and capitalization omitted); see id. at 4-9.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18,

2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff filed his SSI application after that date, the undersigned applies the revised rules and Regulations.

Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); see also Walker v. Soc. Sec. Admin., Comm'r, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (unpublished) (citations omitted) ("Under the new regulatory scheme, the ALJ must articulate how persuasive he finds each medical opinion, but he no longer must assign more weight to a treating source's medical opinion or explain why good cause exists to disregard it.").

The following factors are relevant in an ALJ's consideration of a medical opinion: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[6]

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary,

---

[6] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the opinions at issue are from treating mental health counselor Denise M. Grubb, M.A.; consultative psychological examiner Darrin Kirkendall, Ph.D.; state-agency (non-examining) consultants Renee McPherson Salandy, Ph.D. and Michael Stevens, Ph.D.; and the ME, Stephen Rubin, Ph.D. Each of these experts rendered opinions about Plaintiff's level of mental functioning that, whether considered singularly or collectively, paint a picture of an individual who has significant mental limitations. See Tr. at 448-51 (Ms. Grubb's Mental RFC Questionnaire), 630-35, 636-38 (Dr. Kirkendall's written assessment and Medical Source Statement of Ability to do Work-Related Activities (Mental) form), 101-05 (Dr. Salandy's opinion), 111-12 (Dr. Stevens's opinion), 41-53 (Dr. Rubin's testimony).

In the Decision, the ALJ found as follows. As to Ms. Grubb's opinion, the ALJ found it to be "not persuasive as [the] limitations [of not performing tasks involving relating with others, traveling in unfamiliar places, or using public transportation] lack support by the medical record overall." Tr. at 22. As to Dr. Kirkendall's opinion, the ALJ found it was "not entirely persuasive as there exists discrepancy between the findings on [the Mental Medical Source Statement] form and [Dr. Kirkendall's] narrative statement." Tr. at 22.

As to Dr. Salandy's opinion,[7] the ALJ summarized it as follows:

> [T]he State agency psychologist in April 2018 determined that [Plaintiff] can understand and remember simple and detailed instructions, follow two or three step commands, and persist and maintain attention and concentration for two hour increments to sufficiently complete an eight-hour workday. [Plaintiff] may function in an environment with minimal social interaction with the general public and coworkers and a supportive management style. He may have mild adaptive limitations but can make reasonable decisions and adapt to routine workplace change[s].

Tr. at 22 (citation omitted). The ALJ then found Dr. Salandy's opinion in this regard to be "persuasive" because "subsequent medical records do not establish additional limitations" and because the "limitations are unbiased." Tr. at 22.

---

[7] The ALJ did not refer to Dr. Salandy by name, instead referring to "the State agency psychologist in April 2018" located at Exhibit 1A. Tr. at 22. Exhibit 1A contains Dr. Salandy's opinion. Tr. at 101-13.

The ALJ then addressed the portions of Dr. Salandy's and Dr. Stevens's opinions[8] that Plaintiff has "no more than moderate 'B criteria' limitations" and found them to be "not persuasive as subsequent evidence supports a marked limitation in interacting with others." Tr. at 22-23. The ALJ found that "[t]he restriction for simple, routine, repetitive tasks in the [RFC] accounts for potential attention and concentration limitations resulting from pain." Tr. at 23.

Finally, the ALJ addressed Dr. Rubin's opinion:

> In order to clarify [Plaintiff's] impairments and limitations, I solicited testimony from Dr. Stephen Rubin, a licensed clinical psychologist and impartial medical expert. Dr. Rubin testified that the record indicates an anxiety disorder with panic attacks, possible agoraphobia and major depressive disorder, chronic. [Plaintiff's] impairments, considered singly and in combination, do not meet or medically equal listing 12.04 or 12.06. As to the "B criteria," Dr. Rubin opined that [Plaintiff] has mild limitation in understanding, remembering, or applying information; marked limitation in interacting with others; moderate limitation in concentration, persistence, or pace; and moderate limitation in adapting or managing himself. [Plaintiff] could tolerate occasional interactions with others and motivation may be a factor in the ability to meet work goals. [Plaintiff] could improve with behavioral therapy, and his depression is not as severe as his anxiety in being around others. [Plaintiff] could engage in work with no more than occasional

---

[8] Again, the ALJ did not refer to Dr. Salandy or Dr. Stevens by name, instead referring to "[t]he April and July 2018 findings by the State agency psychologists" located at Exhibits 1A and 3A. Tr. at 22. Exhibit 1A contains Dr. Salandy's opinion, Tr. at 101-13, and Exhibit 3A contains Dr. Stevens's opinion, Tr. at 107-19.

> interaction with others while seeking behavioral treatment.
>
> The opinion of Dr. Rubin is persuasive as he is a licensed clinical psychologist designated by the Commissioner as a medical expert. Dr. Rubin reviewed medical records and provided cogent rationale and medical support for his unbiased opinion. His opinion regarding mental health limitations is persuasive with respect to the [RFC] and is fairly consistent with the psychological consultative examiner's "marked" limitation in dealing with stress though not entirely as such is not supported by exam findings and does not define "stress." Dr. Rubin noted no indication of intellectual stress but evidence of stress with interaction which is accommodated for in the [RFC]. Though [Plaintiff's] attorney focused on Dr. Rubin's opinion that [Plaintiff] is not receiving proper treatment and would need it to even be able to return to work, I do not find this persuasive as it relates to [Plaintiff's RFC]. Dr. Rubin reviewed medical records and provided cogent rationale and medical support for his unbiased opinion.

Tr. at 23 (citation omitted).

The ALJ erred in addressing various opinions regarding Plaintiff's mental functioning and in ultimately assigning the mental aspect of the RFC that required "no more than simple, routine, repetitive tasks; and no more than occasional interaction with supervisors and co-workers and none with the general public." Tr. at 20. As to Dr. Grubb's opinion, the ALJ found that the stated "limitations lack support by the medical record overall," Tr. at 22, without elaborating on how that was so. Although this conclusion reflects consideration of the supportability factor, it does not explain how the ALJ came

to the conclusion as required by the Regulations. See 20 C.F.R. § 404.1520c(b)(2). Nor does it adequately address or explain the consistency factor as required. See id. This frustrates judicial review.

With respect to Dr. Kirkendall's opinion, the ALJ similarly found it was "not entirely persuasive as there exists discrepancy between the findings on [the Medical Statement] form and his narrative statement," Tr. at 22, but did not summarize or otherwise explain the alleged inconsistencies, again frustrating judicial review. See 20 C.F.R. § 404.1520c(b)(2). Moreover, both Dr. Grubb and Dr. Kirkendall assigned some limitations—particularly with respect to interacting with others including supervisors, coworkers, and the public—that the ALJ summarized and seemed to accept while at the same time stating their opinions were not persuasive. See Tr. at 22.

As to Dr. Salandy, the ALJ found the opinion "persuasive," Tr. at 22, but did not include all of the limitations that Dr. Salandy assigned. For example, Dr. Salandy stated that Plaintiff "may function best in an environment with minimal social interaction with . . . co-workers," Tr. at 103, but the ALJ only restricted Plaintiff to "occasional" interaction with co-workers, Tr. at 20. For another example, Dr. Salandy stated that Plaintiff "may have intermittent disturbances from mental impairments but can follow two-three step commands and can persist and maintain attention and concentration for two hour increments sufficiently enough to complete an eight hour workday," Tr. at 103,

which the ALJ recognized in the Decision, Tr. at 22, but did not carry over to the RFC or explain how the RFC might account for this limitation. For a third example, Dr. Salandy stated Plaintiff would need "a supportive management style," Tr. at 103, which the ALJ recognized but did not include in the RFC, Tr. at 20. All of these omissions of the limitations assigned by Dr. Salandy, without any explanation, appear inconsistent with the ALJ accepting Dr. Salandy's opinion as "persuasive." See Tr. at 22.

Finally, as to Dr. Rubin, the ALJ found his opinion overall to be "persuasive," but rejected the portion about Plaintiff not receiving proper treatment and needing it to return to work. Tr. at 23. In rejecting that portion of the opinion, however, the ALJ provided no reasons whatsoever. See Tr. at 23. This omission does not sufficiently comply with the revised Regulations and frustrates judicial review. See 20 C.F.R. § 404.1520c(b)(2).

Given the various errors in addressing the mental opinions of record, and in comparing them to the ultimately-assigned RFC, the undersigned cannot say that the errors are harmless. The matter is due to be reversed and remanded for the SSA to reconsider the opinions about Plaintiff's mental functioning consistent with the revised Regulations.

## V.   Conclusion

Based on the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A) Re-evaluate the various opinions regarding Plaintiff's mental functioning consistent with the revised Regulations for evaluating medical evidence; and
>
> (B) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Standing Order on Management of Social Security Cases entered on December 7, 2021 in Case No. 3:21-mc-001-TJC (Doc. No. 43, ¶¶ 6, 8).

**DONE AND ORDERED** in Jacksonville, Florida on April 20, 2022.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record